**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone:  480-656-3919
Fax:  480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar No. 024181

**ATTORNEY FOR:  PLAINTIFF**

IIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **SHAWN SANDERS,**<br>      **Plaintiff,** | 09-CV-2250-PHX |
| **v.** | <span style="color:red">AMENDED </span>COMPLAINT |
| **CITY OF SCOTTSDALE;**<br>**ALAN G. RODBELL, CHIEF,**<br>**SCOTTSDALE POLICE DEPARTMENT;**<br>**JEFFERY WALTHER;**<br><span style="color:red">**MARK CLARK;**</span><br>           **Defendants**. | **(Jury Trial Demanded)** |

        NOW COMES the Plaintiff, Shawn Sanders, by her attorney, Joy Bertrand, to

allege this complaint against the City of Scottsdale, Arizona, the Chief of Police of the

City of Scottsdale, Arizona, ~~and~~ Police Lieutenant Jeffery Walther of the City of

Scottsdale Police Department, <span style="color:red">and Seargeant Mark Clark of the City of Scottsdale Police</span>

<span style="color:red">Department</span>.

**PARTIES**

1.        The Plaintiff, Shawn Sanders ("Sanders") is an African-American female, who

presently resides in Glendale, Arizona.   Between April 2, 2007 and October 10, 2007,

she was employed as a public information officer (PIO) for the City of Scottsdale, Arizona Police Department.

2.      The City of Scottsdale is a political subdivision of the State of Arizona.

3.      Alan G. Rodbell is the chief of the Scottsdale Police Department.  He oversees the Scottsdale Police Department's operations and is responsible for and accountable for ultimate personnel decisions for the Department.

4.      Jeffery Walther is a lieutenant with the Scottsdale Police Department, who supervised Sanders.  Mark Clark is a Seargent with the Scottsdale Police Department, who supervised Sanders.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 42 USC §§ 2000e-2(a) and 3(a), in that Sanders' cause of action arises under Title VII, Pub. L. 703 and 704.

6.      Venue in this district is proper under 42 U.S.C. 2000e-5(f)(3), because the underlying acts of this complaint took place in the District of Arizona.

## PROCEDURAL STATEMENT OF FACTS

7.      Between April 2, 2007 and October 10, 2007, Sanders worked as a public information officer for the City of Scottsdale, Arizona Police Department.

8.      On October 10, 2007, Sanders resigned in lieu of termination from her position with the City of Scottsdale.

9.      Sanders was replaced by David Pubins, a Caucasian male.

10.     On May 1, 2008, Sanders initiated an Equal Employment Opportunity complaint alleging sexual and racial discrimination (EECO Charge Number 540-2008-02678).

11.    On July 30, 2009, Sanders received a letter from the EEOC, which stated the EEOC was dismissing the charge.

**Formatted:** Left

**SUPPORTING FACTS**

12.     On April 2, 2007, Sanders began her employment at the City of Scottsdale Police

Department as a public information officer.

13.     Sanders have received national awards as a television producer.

14.     Before working for the City of Scottsdale, Sanders worked as a television

producer in Los Angeles, California – the second-largest media market in the world.

15.     Based on information and belief, Sanders was the first non-Caucasian and the

first woman to hold this position.

16.      Sanders passed every written test for this position.

**I.      Racial and Sexual Hostile Work Environment**

17.     From the outset of her employment with the Scottsdale Police Department,

Sanders quickly became aware that, as an African-American female, she was not

welcome.  On or about April 7, 2009, Sanders overhead white, female coworkers say

that someone "who looks like her [Sanders]" should not be representing the City of

Scottsdale on television.

18.     Throughout her employment at the City of Scottsdale, Sanders' direct supervisor,

Sgt. Clark Lieutenant Walther would make racially derogatory comments.  For

example, if Sanders raised concerns about the hostile environment,  ClarkWalther

would reply, "Your people do this . . ." and "Your people always react like that."

Sanders understand the reference to "your people" to be a derogatory reference to

African-Americans.

19.     When Sanders challenged ~~Clark~~ ~~Walther~~ about those phrases, Clark said to her

on at least one occasion, "let it go and do what you're told."

**II.     False, Derogatory Performance Evaluations**

20.     Sanders received monthly performance reviews.  In Sanders' June 2007 review,

Walter falsely alleged that Sanders failed to communicate with the local news network

affiliates regarding a Scottsdale house fire.  Walther alleged that Sanders did not

adequately coordinate with the networks, which Walther stated all arrived at the scene

of the house fire.  Sanders contacted each of the networks at that time and each of them

stated to her that they had no one present on the scene of the house fire, because they all

were covering a shooting and stabbing in Phoenix.

21.     These negative reviews were not based in fact.  The negative reviews were made

despite Sanders' receipt of a commendation, her positive relationships with Scottsdale

police officers, and the negotiation of exclusive information-sharing agreements with

each of the local television news affiliates.  She also had negotiated positive, exclusive

stories about the Scottsdale Police Department with the CNN.  She was forced to leave

her position with Scottsdale Police Department before that agreement could be

finalized.

22.     Walther's negative reviews of Sanders continued, to include allegations that

Sanders could not form positive relationships with coworkers, due, at least in part, on

her challenges to Walther's "your people"  comments.  On October 10, 2007, Sanders

resigned from her position with the Scottsdale Police Department.  As she was escorted

out of the building, Scottsdale Police Commander Marshall told Sanders that Chief Rod

bell was "displeased" with her.

23.     Based on information and belief, none of Sanders' non-minority, similarly

situated coworkers received this treatment.

**III.     Sanders' Termination from the Public Information Position, was Inconsistent
with Similarly Situated White, Male Employees in the Same Office.**

24.     The City of Scottsdale has claimed that Sanders was terminated for failing for

meet the minimum requirements of her position.  Meanwhile, at least two other

Scottsdale Police Department employees, both white males, both during the same time

period as Sanders' employment with the City of Scottsdale, committed actual law

violations.  In one instance, the City of Scottsdale has claimed that the employee

"exceeded expectations."  In the other instance, that probationary employee retained his

job, even after criminal conduct.

25.     During the same time period as Sanders' tenure at the City of Scottsdale, several

media professionals complained about the job performance of Sgt. Mark Clark.  The

City of Scottsdale has maintained, however, that Clark's performance reviews stated

that Clark "exceeded expectations."

26.     During the same time that Sanders worked at the Scottsdale Police Department,

Sgt. Clark violated Arizona law regarding public information requests, to include the

following specific instances:

        a.     On or about June 8, 2007, Clark threatened a reporter for reporting about

        the arrests of the police chief's children sons, stating "it will hurt our relationship

if you continue along this path." Clark then refused to give that reporter public

information, stating several times that the reporter was on his "[expletive] list."

b.      Clark released police reports in which he failed to redact the personal

identifiers of a minor, who was a criminal suspect.

c.      On or about September 18, 2007, Clark ignored a properly filed request for

information.

d.      On Nov. 26, 2007, Clark again denied a properly filed request for

information. When he was caught failing to provide the information, he falsely

stated "no one requested it."

27.      On or about April 22, 2007, during Sanders' tenure at the Scottsdale Police

Department, a white male police officer, Eric Teeter, was arrested for drag racing and

charged criminally. The matter was reported in the media. That officer is still with the

department.

**IV.      Ongoing Retaliation**

28.      Sanders was unable to find new employment for <u>one year</u> <s>six months</s> after she

left the City of Scottsdale. With five different, perspective employers, Sanders was told

she would be hired after a prior employment check. Each time, she was not hired.

Sanders has no other negative work history that would explain her employment

rejections after background checks.

**PLAINTIFF'S CAUSE OF ACTION AGAINST DEFENDANT FOR INTERFERING WITH PLAINTIFF'S RIGHTS UNDER 42 USC § 2000e**

29.     Sanders realleges Paragraphs 1 through 28 above as if fully realleged herein.

30.     Sanders was subjected to a hostile work environment, based upon her sex and race, in violation of Title. VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

31.     Sanders was terminated from her employment based upon her sex and race, in violation of Title. VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

32.     Management retaliated against Sanders, because she complained of sexual and racial harassment while employed by the Scottsdale Police Department, in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

33.      Management retaliated against Sanders, because she filed an EEO complaint, in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

34.     Management's retaliation against Sanders for her participation in a protected EEO activity was not trivial and would have dissuaded a reasonable worker from making or supporting a charge of discrimination, contrary to Pub. L. 88-352, § 704(a) and *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

35.     Sanders has been damaged by management's violations of the Civil Rights Act of 1964, as amended by 42 U.S.C. 2000e-2(a) and 3(a) inasmuch as:

a.      Sanders sustained significant stress, pain and suffering, and mental and emotional anguish from the harassment and retaliation set forth in this complaint;

b.      The stress, pain and suffering, and mental and emotional anguish that this harassment, disparate treatment, and retaliation manifested in heart disease and digestive disorders that requires medical care.

c.      The financial consequences of being terminated from one job and being unemployed for one year six months were financially devastating for Ms. Sanders, resulting in late fees, derogatory credit report information, and higher interest rates on current and future lines of credit.

d.      Therefore, Sanders prays this court award of $300,000 for the above-described violations of her civil rights.

36.     Sanders had to hire an attorney to handle this matter before this Court. She therefore also seeks recovery of her attorney fees and costs, pursuant to 42 U.S.C 2000e5.

        WHEREFORE, Plaintiff requests this Court to enter a Judgment in her favor of $300,000 for: medical expenses and pecuniary damages. She further seeks attorney fees and costs and such other relief as may be just and proper. In addition, Sanders seeks: (1) appropriate discipline or termination for all responsible management officials; (2) reinstatement as a Public Information Officer for the Scottsdale Police Department; (3)

rescind the negative reviews in her personnel file;  (43) pay her back pay and benefits, plus interest;  (54) provide her with a letter of recommendation;  and (65) provide all other relief available under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., for which she qualifies.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Respectfully submitted this Fifth  27th day of January, 2010October, 2009.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff